COLONIAL TRUST CO. et al. v. CHAPLIN–FULTON MFG. CO. et al.

(District Court, W. D. Pennsylvania.   June 23, 1920.)

No. 351.

Patents ⬅285—Causes of action joined in infringement suit must be joint.
    The separate owners of two patents, one having the interest of a
    ·licensee only in the patent of the other cannot join in a suit for infringe-
    ment of both patents, under Equity rule. 26 (201 Fed. v; 118 C. C. A. v),
    providing that, when there is more than one plaintiff, the causes of action
    joined must be joint.

In Equity.   Suit by the Colonial Trust Company, trustee, the West-
inghouse Electric & Manufacturing Company, and the Chowning Regu-
lator Corporation against the Chaplin-Fulton Manufacturing Company
and others.   On motion to dismiss bill.   Motion sustained.

Green & McCallister, of Pittsburgh, Pa., for plaintiffs.
Christy & Christy, of Pittsburgh, Pa., and McGill & Maguire, of
Washington, D. C., for defendants.

THOMSON, District Judge.   This is a motion to dismiss the bill,
first, for misjoinder of parties plaintiff; and, second, for misjoinder
of parties defendant.   At the argument plaintiffs' counsel asked leave
to amend the bill alleging conjoint or co-operative infringement by the
defendants.   The motion being allowed, the bill will be considered as so
amended.

As to misjoinder of parties plaintiff:   The bill is for infringement of
two patents.   The title to one, No. 935,283 ·is as follows:   Assign-
ment from John H. Stringham to the Westinghouse Machine Com-
pany, dated May 24, 1905, and duly recorded; assignment from the
Westinghouse Machine Company to the Colonial Trust Company, as
trustee, dated May 9, 1911.   The title to patent No. 1,066,252, is by
two assignments—one dated January 24, 1913, from Leroy C. Chown-
ing, and one dated March 31, 1914, from said Chowning et al., to the
Chowning Regulator Corporation.

The bill then alleges that by virtue of a written agreement between
the Westinghouse Machine Company and the Chowning Regulator Cor-
poration, dated October 6, 1916, the Chowning Company acquired an
exclusive license to manufacture, use, and sell the invention of patent
No. 935,283, throughout the United States, upon certain terms and
conditions appearing in said agreement, and that by letters patent of
the commonwealth of Pennsylvania, dated June 15, 1917, the Westing-
house Machine Company and the Westinghouse Electric & Manufac-
turing Company became merged, forming the Westinghouse Electric
& Manufacturing Company, one of the plaintiffs, in which the equitable
title to said patent No. 935,283 became vested.

It thus appears from the bill:   First, that the Colonial Trust Com-
pany, trustee, and the Westinghouse Electric & Manufacturing Com-
pany, have no right, title, or interest whatever in the Chowning patent,
owned and held by the Chowning Regulator Corporation.   For any

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

infringement of that patent, the said Chowning Regulator Corporation alone has a right of action. Second, while it is averred that the Westinghouse Electric & Manufacturing Company has an equitable right in the Stringham patent, it nowhere appears in the bill how such equitable right, if it existed, arose or was acquired by said Westinghouse Company. On the other hand, it appears that title to said invention became vested in the Westinghouse Machine Company by virtue of a written assignment from Stringham to said company, which was duly recorded, and that "by virtue of a similar assignment from said Westinghouse Machine Company to the Colonial Trust Company, as trustee, dated May 9, 1911, and recorded in the same office .[giving the place of record), legal title to the said patent became vested in the Colonial Trust Company, as trustee." Third, title having thus passed to the Colonial Trust Company, as trustee, on May 11, 1911, so far as appears by the bill, the Westinghouse Machine Company on October 6, 1916, had no power or authority to convey to the Chowning Regulator Corporation "an exclusive license to manufacture, use, and sell the invention of the patent No. 935,283 throughout the United States upon certain terms and conditions," and it is only by virtue of such contract that the parties plaintiff could, by any possibility, be said to be jointly interested in one of the patents in suit.

Under equity rule 26 (201 Fed. v, 118 C. C. A. v), "when there is more than one plaintiff, the causes of action joined must be joint." In whose favor, under the patent laws, does a cause of action arise on a patent? This is made clear by Chief Justice Taney, in Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. The Chief Justice there elucidates these fundamental propositions:

1. That the patent law confers upon the inventor the exclusive right to the use of the improvement, and that prior to such issue no suit can be maintained.

2. The act of Congress makes every patent assignable in law by an instrument in writing, to be recorded within the time specified, the thing assigned being the monopoly which the grant confers, the right of property which it creates, and under an assignment suit must be brought by the assignee.

3. That the monopoly granted is one entire thing, "the exclusive right of making, using, and vending to others for use the improvement covered by the patent, and, as the monopoly is created by act of Congress, no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes."

4. The law recognizes three assignments only: (a) The whole interest in the patent; (b) an undivided part of the entire interest, whereby the patentee and assignee become joint owners of the whole interest secured by the patent; (c) the assignment of an exclusive right within a specified part of the United States.

Under the second of these, the patentee and assignee sue jointly. Under the third, the assignee sues in his own name; but, to entitle him to do so, the assignment must convey to him the entire and unqualified monopoly which the patentee held in the territory specified, excluding even the patentee himself, and that any assignment short of this is a mere license.

A contract for the purchase of any portion of the patent right may be good and enforceable as a license, as between the parties themselves;

but the legal right in the monopoly remains in the patentee, and he alone can maintain an action against the third party who commits an infringement against it. These same general propositions are enunciated by Justice Gray, in Waterman v. McKenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923. Referring to the three kinds of assignments above enumerated, Justice Gray says:

"A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers—in the second 'case, jointly with the assignor; and in the first and third cases, in the name of the assignee alone. Any assignment or transfer short of one of these is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement."

While the grant of an exclusive right to manufacture and sell the invention throughout the United States would in legal effect be an assignment of the patent, such an assignment could not be operative in this case, because of the prior outstanding title in the Colonial Trust Company, trustee. We must therefore assume that, by reason of the "terms and conditions" contained in the contract with the Chowning Regulator Corporation, the grant is a mere license, as the plaintiff calls it, and not an assignment, which attempted to convey the title. Such license carried with it no right of action in the Chowning Regulator Corporation for infringement. That right remained in the owner or owners of the title. As was said by Chief Justice Taney in the case above referred to:

"It was obviously not the intention of the Legislature to permit several monopolies to be made out of one, and divided among different persons within the same limits."

This for the reason that it would lead to fraudulent impositions upon purchasers and a harassing multiplicity of suits. As the facts appear in the bill, there being more than one plaintiff, I do not think that the causes of action joined are joint, within the true meaning of equity rule 26, nor do I think that this ruling conflicts with that of Judge Dickinson in the case of Low v. McMaster (D. C.) 255 Fed. 235, upon which plaintiffs chiefly rely.

The motion to dismiss the bill is sustained, and the bill dismissed, with costs.